(80 South. 234)

No. 22965.

Succession of RACE.

(June 29, 1918. Rehearing Denied Dec. 2, 1918.)

*(Syllabus by Editorial Staff.)*

1. WILLS ☞194 — TESTAMENTARY DISPOSITION—REVOCATION—STATUTE.

Where testatrix made a residuary bequest in trust to establish and forever maintain a school at her homestead site as a memorial to her deceased husband, and, after making her will, sold her homestead and gave most of proceeds to a university to endow a memorial, the location of school was an indispensable condition of bequest, and under Civ. Code, art. 1691, it was revoked by the subsequent disposition.

2. WILLS ☞194—REVOCATION OF TESTAMENTARY DISPOSITION — DONATION OR SALE—STATUTE.

Civ. Code, art. 1695, providing that a donation or sale of property described in a testamentary disposition revokes the disposition of only what has been sold or donated, does not apply where the use of the property subsequently sold was an indispensable condition of the testamentary disposition in question, and in such case the whole disposition is thereby revoked.

3. WILLS ☞194 — TESTAMENTARY TRUST—REVOCATION.

A bequest in trust to establish and forever maintain a school at testatrix's homestead site as a memorial to her deceased husband is within Act No. 124 of 1882, permitting donation to trustees for educational or charitable purposes, and, under sections 3 and 6, if the donor's or testator's subsequent disposition of an essential part of property renders the administration of the trust impossible, the testamentary disposition is entirely revoked.

4. WILLS ☞195—TESTAMENTARY TRUST—INCIDENTAL CONDITIONS—EFFECT OF REVOCATION OF TRUST.

Where testatrix left a residuary bequest in trust to establish a school at her homestead site as a memorial to her deceased husband, and required trustees to forever care for the family mausoleum, such condition was not within Act No. 124 of 1882, permitting testamentary disposition in trust for charitable institutions, etc., and where residuary bequest was itself revoked by a subsequent disposition of homestead in testatrix's lifetime, the condition was void.

Appeal from Civil District Court, Parish of Orleans; George H. Théard, Judge.

Suit by the heirs at law of Mrs. Olivia C. Kittredge Race against the testamentary executor and the Rector, Warden, and Vestrymen of Trinity Church, the residuary legatees. From a judgment decreeing a residuary legacy and certain codicils to the will void, the executor and the legatees appeal. Affirmed.

W. W. Wall, William A. Bell, Johnston Armstrong, and Hall, Monroe & Lemann, all of New Orleans, for appellants testamentary executor and rector, wardens, and vestry of Trinity Church.

Howe, Fenner, Spencer & Cocke, of New Orleans (Presley K. Ewing, of Houston, Tex., of counsel), for plaintiff appellees.

Ivy G. Kittredge, of New Orleans, for intervener appellees.

O'NIELL, J. At the suit of some of the heirs at law—collateral relations—of Mrs. Olivia C. K. Race, a residuary bequest in her will, and certain codicils thereto, were decreed null. The defendants, the testamentary executor and the legatees to whom the residuary legacy was given in trust, prosecute this appeal.

The bequest was made to the rector, wardens, and vestrymen of Trinity Church, in New Oreleans, in perpetual succession, in trust, to establish and forever maintain at

the homestead site of the testatrix, at No. 309 St. Charles avenue, New Orleans, a school for poor boys, as a memorial to the deceased husband of the testatrix. As a part of the trust the trustees were enjoined forever to care for the family mausoleum of the deceased husband in New Orleans, to keep it in order at all times, and have it decorated with flowers on the 1st of November of each year, at the expense of the revenue of the legacy given them in trust.

Twenty-seven years after making the will, seven years before her death, the testatrix, who had moved away from New Orleans, sold her homestead there for $15,000, and gave $14,000 of the proceeds to the University of the South, at Sewanee, Tenn., to endow an auditorium in that institution as a memorial to her husband.

The contention of the contestants is, and the district court has held, that, by selling her homestead in New Orleans and using the proceeds as she did, the testatrix revoked the testamentary disposition in trust to establish a memorial school in New Orleans, and, in fact, annulled the testamentary disposition, by rendering an indispensable or essential part of it impossible.

The appellants contend, on the contrary, that the sale of the homestead revoked only the bequest of the homestead itself, which was not an indispensable part of the residuary bequest, as a site for a memorial school in New Orleans. They admit that the homestead site is not available for the proposed memorial school, because the purchaser of the property has erected a $200,000 building on the lot. But the trustees claim the right to carry out the trust as nearly in accord with the will of the testatrix as it can be done, by establishing the memorial school elsewhere in New Orleans, on a site to be selected hereafter by the trustees, to be bought with a part of what remains of the residuary legacy.

The controlling question, therefore, is whether the location of the proposed memorial school on the homestead site was intended by the testatrix to be an essential and indispensable condition of the bequest, or was a mere detail in the mode or manner suggested for carrying out the trust.

The testament, written in Kansas City, Mo., on the 31st of October, 1889, disposes of eleven particular legacies to as many individuals, and concludes with the residuary bequest in contest, viz.:

"The rest, residue, and remainder of the estate, real, personal or mixed, which I now own, or which I may acquire and own at my decease, I give, devise and bequeath to the rector, wardens and vestrymen of Trinity Church, New Orleans, La., in perpetual succession in trust for the following purposes, namely:

"First. To establish and forever maintain at No. 309 St. Charles avenue, New Orleans, La., the same being the site of my homestead, an institute for the education of poor boys. Said institute shall be a memorial to my dearly beloved husband, the late George W. Race, of New Orleans; it shall bear the inscription, 'The George W. Race Memorial Church School'; said institute, if possible, shall be endowed, be it on ever so small a scale. I do not wish it reduced to the level of fairs, raffles and begging generally. The instruction in said school shall be free for poor boys, orphans to have the preference. It shall be a distinctly church school as preparatory to Tulane University of New Orleans. The boys shall be under distinctly religious influences both of worship and teaching, the religious instruction to be under the care of the rector of Trinity Church, New Orleans, he to be rector ex officio, with the bishop of the diocese of Louisiana as visitor. A portion of the institute shall be set apart for and used as a chapel. The two pews which I own in Trinity Church, New Orleans, shall be owned by said institute for the use of the pupils. I hereby empower the said trustees to invest all moneys arising from my said estate so bequeathed, given and devised in trust, so that a revenue may be produced for the support and maintenance of said institute, said trustees may exchange, use or sell the real estate, except said homestead, for the benefit of said institute, and manage and control said institute in all things necessary to be maintained.

"If at any time the parish of said Trinity Church shall cease to exist, then all and every estate herein bequeathed, given and devised in

trust to the said rector, wardens and vestrymen, shall go to the bishop of the diocese of Louisiana, and his successors in office, in trust, to carry out the object and purpose of the trust last above created and described.

"Second. And as a part of said trust I enjoin the said rector, wardens and vestrymen of said Trinity Church in perpetual succession forever to care for the family mausoleum bearing the inscription, 'Family Vault of George W. Race,' in Odd Fellows Rest, New Orleans, and to keep it at all times of the year in order, and decorated with flowers on every first day of November, the expense of the same to come out of the revenue of my estate so given, devised and bequeathed as last aforesaid in trust."

On the 11th of November, 1891, in Washington, D. C., the testatrix made a codicil, referring to certain property which she had disposed of in that city, and otherwise confirming and ratifying expressly the will she had made in Kansas City on the 31st of October, 1889.

On the 24th of September, 1898, in St. Louis, Mo., she made another codicil, changing some of the particular legacies, and revoking others, in the will she had made in Kansas City on the 31st of October, 1889, and concluding with this reference to the residuary bequest now in contest, viz.:

"All legacies mentioned in my last will and testament and in the two codicils which may lapse or otherwise fail, I wish to revert to my estate and added to the fund set apart for the George W. Race Memorial School, corner of St. Charles and Clio streets, New Orleans, Louisiana."

On the 17th of November, 1901 (the figures 1891 in the record being admitted to have been intended for 1901), in Washington, D. C., the testatrix made another will or codicil, in olographic form, disposing of certain particular legacies, changing some and revoking others in her previous will and codicils, and concluding thus:

"I hereby revoke all wills save the one made in Kansas City, Missouri, dated October 31, 1889, a codicil made in Washington, D. C., dated November 11, 1891, and a codicil made in St. Louis, Missouri, dated September 24, 1898."

144 LA.—6

The testatrix had lived in the homestead in New Orleans, with her husband, from the time of their marriage, in 1855, until his death, in 1881. She acquired the property as universal legatee of her husband, and continued her residence there four years after his death. Then she left Louisiana, residing a few years in Philadelphia, a while in Kansas City, then in Washington, and in 1903 she established her home in Sewanee, where she remained until her death. She died there in 1916, in her eighty-first year.

While residing in Sewanee, in 1909, she sold the homestead in New Orleans, No. 309 St. Charles avenue, to a Masonic order called Jerusalem Temple, for $15,000, and donated $14,000 of the proceeds (nearly all that remained after paying the agent's commission and costs) to the University of the South, in Sewanee, for an auditorium to be erected as a memorial to her husband. He had been one of the trustees of the university; and it had been the custom of Mr. and Mrs. Race to spend the summer months in Sewanee, when they resided in New Orleans.

[1, 2] The testatrix, being well educated and highly intelligent, expressed her intentions plainly, without doubt or ambiguity, in her testamentary dispositions. We have no more reason to doubt that it was her intention that the location of the memorial school on her homestead site should be an indispensable condition of the bequest than to doubt that she intended that its being a memorial to her husband should be an indispensable condition. In fact, from the order of her expressions, it appears that her first thought was of the location of the memorial school, viz.:

"To establish and forever maintain at No. 309 St. Charles avenue, New Orleans, the same being the site of my homestead, an institute for poor boys. Said institute shall be a memorial to my dearly beloved husband, the late George W. Race, of New Orleans; it shall bear the inscription 'The George W. Race Memorial Church School,' " etc.

And the last thought she expressed in that paragraph was of the location of the school, viz.:

"Said trustees may exchange, use or sell the real estate, except the homestead," etc.

It is certain that, when the testatrix made her will, and when she confirmed the residuary bequest with the codicils, she had no thought of selling her homestead. She had then no intention, one way nor the other, as to whether a memorial school should be established elsewhere, in the event of her selling the homestead site. It would be absurd, therefore, to attempt to ascertain what her intention was, when she wrote her will, as to the location of the memorial school on the homestead site being an indispensable condition of the bequest, because it never occurred to her, while she was making the will or while making any of the codicils, that the question would ever arise whether a memorial to her husband should be erected elsewhere than on the homestead site. All that we could attempt or hope to ascertain in that respect is: What would have been the intention of the testatrix when she made her will, what testamentary disposition would she have made, if any, for the location and establishment of a memorial to her husband, if she had thought of selling her homestead? Perhaps the testatrix answered that question when she provided, after selling her homestead, for a memorial auditorium in the university of which he had been a trustee.

Be that as it may, it would not be our province to make for the testatrix any testamentary disposition that we might know she would have made if she had thought of a subsequent event, of which we know she had no thought, when she made her will.

It may be presumed that the testatrix thought of the testamentary disposition that she had made of her homestead when she sold the property and rendered the testamentary disposition impossible. But we cannot infer, from her failure to make another testamentary disposition of the residuum of her estate, that she intended that another memorial should be erected to her husband by the establishment of a school elsewhere than on her homestead site. It is as reasonable to presume that she believed the sale of her homestead operated a revocation of the testamentary provision which she had made for a memorial school on her homestead site in New Orleans as it is to presume that she intended to leave it to the trustees to establish the memorial school wherever they might see fit. In fact, we consider it far more likely that the lady would have made some other testamentary provision for the location of the memorial school in New Orleans if she had intended that it should be established there notwithstanding she had sold her homestead. She had been very explicit in providing that the memorial school should be located on her homestead; and she was thereafter very methodical in making a testamentary provision on every occasion that she thought demanded it. We cannot believe that she retained the idea of establishing a memorial school in New Orleans, but became indifferent as to its location after she sold her homestead.

The residuary estate of the testatrix is appraised at about $60,000. The sale of the homestead, therefore, took away a fifth of the estate that had been intended to be devoted to the memorial school, and to purchase a site of equal value would leave only about $45,000 for the construction and maintenance of the school. It appears from expressions in her will that the testatrix realized that the fund was scant; and it is not likely that she intended yet that the memorial school should be erected when she took away the site and diminished the fund to the extent which she deemed sufficient to establish a memorial elsewhere.

The learned counsel for appellants re-

ly upon article 1695 of the Civil Code, providing that a donation or sale of property described in a testamentary disposition operates a revocation of the testamentary disposition of only what has been sold or donated. But that general provision of the law has no application to a case where the use of the property subsequently sold was an essential or indispensable condition of the testamentary disposition in question. We cannot avoid the question, upon which this decision turns, whether the location of the memorial school on the homestead site was an indispensable condition of the bequest in contest. The doctrine applicable to this case is contained in article 1691 of the Civil Code, that a testamentary disposition is revoked, tacitly or by implication, if the testator subsequently does what is so inconsistent with the testamentary disposition as to manifest a change of will.

But the doctrine that is perhaps more applicable is this: That if, by a voluntary act on the part of the testator, an essential part or indispensable condition of a testamentary disposition has been rendered impossible of execution, the whole disposition is thereby revoked and annulled.

The learned counsel for appellants rely upon the decision in the famous case entitled State v. McDonogh's Ex'rs, 8 La. Ann. 172, where it was held that certain illegal conditions in a testament were, under the provisions of article 1599, R. C. C., to be considered or reputed as not written, but did not annul the testamentary disposition itself. It is sufficient to say that in that case the court concluded that the illegal or impossible conditions were not essential or indispensable conditions of the will. In the case before us the impossible condition is, in our opinion, essential and indispensable to the carrying out of the will of the testatrix; and the impossibility was brought about by a subsequent and voluntary act of the testatrix herself.

[3] It makes no difference, in our opinion,

whether the disposition in contest is to be regarded as a donation on condition or as a testamentary trust, made according to the provisions of Act No. 124 of 1882, p. 172, for an educational purpose, because of our conclusion that the condition which has been rendered impossible by the testatrix was an essential and indispensable condition of the trust. We think, however, that this testamentary disposition comes plainly within the provisions of the statute permitting donations, either mortis causa or inter vivos, to be made to trustees for educational, charitable, or literary purposes, or for the benefit of educational, charitable, or literary institutions, already existing or to be founded, and exempting such donations from the laws affecting substitutions, trusts, and fidei commissa. Under section 3 of the statute, the donor or testator of such a gift has the right to prescribe the manner in which the property donated or bequeathed shall be administered and the objects to which it or any part thereof, or the revenues thereof, shall be applied. The only restriction is that the property so donated or bequeathed cannot be made inalienable. Under section 6 of the statute, the trustees of such a donation or bequest are required to administer the property intrusted to them in conformity with the directions contained in the act of donation or testament. Hence it follows that, if the donor or testator has, by a subsequent disposition of an essential part of the property, rendered it impossible for the trustees to administer the remaining part of the property that was formerly intended to be intrusted to them in conformity with the directions contained in the act of donation or testament, and has thereby annulled an essential and indispensable condition of the trust, the donation or testamentary disposition becomes entirely revoked and annulled. The same principle applies as to a donation on condition. The question always is, as it is in this case, whether the condition that has been rendered

impossible by the testator was an essential or indispensable condition of the whole testamentary disposition. Our conclusion that the condition which has been rendered impossible by the testatrix was an essential and indispensable condition of the bequest puts an end to the case.

[4] That part of the trust in which the testatrix enjoined the trustees forever to care for the family mausoleum, to keep it at all times in order, and decorate it with flowers on All Saints' Days, is not within the provisions of the Act No. 124 of 1882, permitting testamentary dispositions in trust for educational, literary, or charitable institutions, except, perhaps, that the disposition is a part of the trust established for the educational purpose. Being, as the testatrix declared, a part of the one and only trust, which we have concluded has been revoked and annulled, the provision for the care of the mausoleum is null and without effect.

The judgment appealed from is affirmed.

PROVOSTY, J., concurs on the ground that the will must be considered as having been revoked.

MONROE, C. J., takes no part.